UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SCOTT DRURY                                              PLAINTIFF

v.                                    CIVIL ACTION NO. 3:06-CV-660-S

RUSS CRANMER, et al.                                    DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on defendants' motion for partial summary judgment (DN 46).

The parties have filed responses and replies (DN 48; DN 49).  For the reasons that follow, the court

will grant defendants' motion for partial summary judgment.

BACKGROUND

This action arises from the arrest of plaintiff, Scott Drury ("Drury"), by defendant Spencer

County Deputy Sheriff Russ Cranmer ("Cranmer") on January 7, 2006, and out of the events that

unfolded in the following hours.

Cranmer arrested Drury for DUI and disorderly conduct after Drury attempted to intervene

in an unrelated police investigation near Drury's home in Taylorsville, Spencer County, Kentucky.

Drury claims that Cranmer threw him against the police car at the scene of the arrest without any

justification for doing so.

Cranmer transferred Drury to the custody of Spencer County Transportation Officer William

1

McKinney ("McKinney"), who took Drury to the Bullitt County Jail.[1]  The Bullitt County Jail refused to accept Drury because Drury was wearing duragesic pain medication patches on his torso which conflicted with the jail's narcotics intake policy.  McKinney notified Cranmer that the jail would not accept Drury, and Cranmer instructed McKinney to bring Drury back to the Spencer County Sheriff's Office.

Mistakenly believing that McKinney had brought Drury to the Shelby County Jail, Cranmer contacted the Shelby County Jail to question why Drury's admittance had been denied.

> "What's the problem.  I sent a prisoner there, but you wouldn't take him," and they said, "We don't turn down any prisoners," and I told him the situation.  I said, "He had on some narcotic patches," and he said, "Well, it is just like any other dope, if it's in his body we take them off.  Bring him over here and we'll take him." *Deposition of Russ Cranmer*, pp. 52-53.

At the Spencer County Sheriff's Office, Cranmer told Drury that he was going to remove Drury's patches in order to facilitate Drury's admission to jail.  Drury protested, "You're not taking my patches off of me.  I'll die without them."  *Id.* at 53.  Cranmer replied, "They're just plain patches, Scott.  It's not going to kill you, and I've got to take them off.  I need you to stand up."  *Id.*

It is undisputed that Cranmer subsequently removed Drury's patches.  However, the parties offer differing versions of what happened in the Spencer County Sheriff's Office.

Cranmer claims that he had McKinney remove Drury's handcuffs.  *Id.*  Cranmer claims that he took Drury underneath the arms and stood him up because Drury refused to stand up on his own.  Cranmer claims that he leaned Drury against the door, placed one hand on Drury's shoulder to steady him, and went to reach under Drury's shirt.  *Id.* at 55-57.  Cranmer claims that he went to

---

[1]Spencer County does not have a jail and transports its prisoners to Bullitt, Nelson, and Shelby Counties.  *Deposition of William McKinney*, p. 17.

2

reach under Drury's shirt and Drury cried, "Oh, oh, you hurt my shoulder" and collapsed to his knees "doing his number and hollering that I hurt him." *Id.* at 57. Cranmer claims that he lifted Drury from the floor by his shoulders and helped him back into a chair. *Id.* at 58. At that time, Deputies Chris Martin ("Martin") and Tim Cunningham ("Cunningham") entered the office. *Id.* at 53-54. Cranmer claims that he allowed Drury to compose himself and again explained that he needed to remove Drury's patches. Cranmer claims that "At that time [Drury] did not resist," and Cranmer removed the patches. *Id.* at 59-60.

Drury claims that his hands remained cuffed in front of him for the duration of the episode in the sheriff's office. *Deposition of Scott Drury*, pp. 95-96; 100; 103; 108. Drury claims that Cranmer became aggravated when Drury refused to stand up. Drury claims that Cranmer grabbed him by the jacket, threw him down on the desk, and threw him into the door, whereupon he fell to his knees. *Id.* at 95; 105.

Drury claims that Martin and Cunningham came from around the corner to see what was going on. Drury claims that he was put in a chair by Martin and Cranmer, faced towards the wall, and that Cranmer removed his patches. Drury claims that he was not disrespectful and did not act aggressively towards the officers. *Id.* at 109-113.

Because Drury so requested, Cranmer instructed Martin and Cunningham to take Drury to the hospital to have his shoulder examined. Cranmer instructed the deputies to inform hospital personnel that Drury's patches had been removed and that he needed to be taken to jail. Drury was treated for his shoulder at the hospital and released. Drury was transported to the Shelby County Jail and admitted.

Drury claims that he suffered withdrawal symptoms in jail from the removal of the

patches.  Drury later was diagnosed to have suffered a dislocated left shoulder and a re-tear of the left anterior labrum, which he injured in 2004.

Drury stipulated to probable cause on the charges of DUI and disorderly conduct and both charges were dismissed.  Drury filed this civil rights action against Cranmer and defendant Spencer County Sheriff Steve Coulter ("Coulter") pursuant to 42 U.S.C. § 1983 and state law. Defendants removed the suit to this court.

Drury specifically alleges unlawful seizure and cruel and unusual punishment pursuant to 42 U.S.C. § 1983 and state false arrest and assault and battery claims against Cranmer based on excessive force.  Drury specifically alleges joint and several liability on the part of Coulter based on claims that Coulter knew or should have known of Cranmer's wrongful conduct and propensities, had no policies or procedures designed to prevent such conduct, and failed to discipline or correct Cranmer for his wrongful conduct.[2]

The court has federal question jurisdiction over the claims in this action arising under 42 U.S.C. § 1983 and supplemental jurisdiction over the related state law claims.

DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*,

---

[2]In their motion for partial summary judgment, Defendants refer to the allegations against Coulter as joint and several liability, negligent hiring and negligent retention, and improper training, and they argue accordingly.  In response, Drury argues that the claims against Coulter are based on Cranmer's role as Coulter's "final policy maker" and Coulter's failure to investigate Cranmer's conduct.  The court will consider the law cited by the parties, as it applies to the facts, in addressing the ambiguous claims against Coulter.

536 F.2d 1126, 1134 (6th Cir. 1976).  Not every factual dispute between the parties will prevent summary judgment.  The disputed facts must be material.  They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).  The dispute also must be genuine.  The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  *Id.* at 2510.  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).  The evidence must be construed in a light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

The parties are fairly consistent in identifying which facts are disputed in this action.  The parties do not dispute that genuine issues of material fact exist with respect to the force used by Cranmer.  As such, neither party seeks summary disposition of the claims against Cranmer, all of which are predicated on excessive force.[3]  Coulter and Drury seek summary judgment on the claims against Coulter.

In response to Defendants' motion for partial summary judgment, Drury argues that Coulter is not entitled to summary judgment because Cranmer was Coulter's "final policy maker," and because Coulter failed to investigate Cranmer's conduct.

Drury cites *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d

---

[3]Because there appears to have been confusion between the parties, at least initially, the court wishes to clarify that Drury has not alleged separate, independent claims against Cranmer predicated on either the "arrest" or "false imprisonment" components of any claim.

452 (1986) for the proposition that municipal liability may be imposed for a single decision by a municipal policymaker.  In *Pembaur*, deputy sheriffs received instructions from the Sheriff's Office to follow the orders of the County Prosecutor, who ordered the deputy sheriffs to enter the petitioner's medical clinic and to serve arrest warrants on the petitioner's employees.  In ordering the deputy sheriffs to enter the petitioner's clinic, the Court held that the County Prosecutor was acting as the final decision maker for the county, and that the county may be held liable under § 1983 for violation of the petitioner's Fourth Amendment rights.  *Pembaur* at 485.  However, the Court emphasized:

> Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered.  The fact that a particular official - even a policymaking official - has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. . .  We hold that municipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.  *Id.* at 482-484 (*citing Oklahoma City v. Tuttle*, 471 U.S. 808, 822-824 (1985)).

Drury argues that Cranmer was Coulter's "final policy maker" on the evening of January 7, 2006 by virtue of his being chief deputy with complete authority to run the night shift.  Drury further argues that Cranmer's unilateral decision to remove Drury's patches constituted the making of municipal policy regarding individuals in police custody who are wearing duragesic patches.

There is no evidence to suggest that Cranmer had any policymaking authority with regard to this incident or any policymaking authority whatsoever.  It is clear from *Pembaur* that Cranmer was not a "final policy maker" so as to give rise to liability against Coulter in his capacity as sheriff.

Drury argues that *Angarita v. St. Louis Co.*, 981 F.2d 1527 (8th Cir. 1992) provides a

separate basis for supervisory liability for Coulter based on Coulter's failure to investigate the complaint of Cranmer's use of excessive force.  In fact, though, *Angarita* entirely undermines Drury's contention.  *Angarita* was a § 1983 action by former county police officers who alleged that they were coerced into resigning from their positions.  One issue in that case was whether a submissible claim was made against the superintendent of police for the conduct of his subordinates. The court held:

> For [the superintendent] to be held liable under Section 1983 for conduct of his subordinates, he must have participated to some extent in that conduct and known about and facilitated the conduct, approved it, condoned it, or turned a blind eye for fear of what others might see.  In other words, he must have acted either knowingly or with deliberate, reckless indifference.  *Angarita* at 1545 (internal citations omitted).

In holding that a submissible claim was made against the superintendent, the court held that sufficient evidence was produced to find that the superintendent had known every step his subordinates were taking and had either tacitly or actually approved every act:

> The record does not support the assertion that [the superintendent] had no knowledge of the events occurring on April 4, 1984, and had no power to stop the events. The evidence supports the jury's finding that he, at least, approved of and condoned the activity, and, in all likelihood, facilitated the activity.  *Id*. at 1545.

The basis for finding liability on the part of the superintendent in *Angarita* provides the reason for *not* finding liability on the part of Coulter in this case.  Here, the record supports the assertion that Coulter had no knowledge of the events occurring on January 7, 2006, and had no power to stop them.  The evidence does not support a finding that Coulter approved of, condoned, or facilitated Cranmer's alleged use of excessive force.  Because Coulter had no personal involvement in the incident that is the subject of Drury's complaint, the claims against Coulter must

be dismissed.[4]

CONCLUSION

Because the court finds that there are no genuine issues of fact, and defendants are entitled to summary judgment on the claims against Coulter as a matter of law, defendants' motion for partial summary judgment will be granted.

A separate order will be entered herein this date in accordance with this opinion.

---

[4]In light of the court's grant of summary judgment on the claims against Coulter as a matter of law based on an absence of issue of genuine material fact, the court will not consider summary judgment on the separate basis of qualified immunity.